WILLIAM. BRADT, Respondent, v. WALTER S. CHURCH,
APPELLANT.

*Evidence — presumption that a perpetual lease still exists — that a party enters under
the lawful title — what acts of a tenant are required to render his holding an adverse
one — admissibility of a judgment to show a peaceful entry — when a recovery cannot
be allowed under a claim hostile to that alleged in the complaint.*

This action was brought to recover the possession of a farm which was, on May 5,
1794, subject to the terms and conditions of a perpetual lease executed at that
date by Stephen Van Rensselaer to Peter Snyder. The plaintiff claimed title
under a quit-claim deed executed in 1863, by the sons of one St. John, by whom
and St. John the farm had been occupied since 1850. The plaintiff continued to
occupy the farm until 1881, when he put his son Jeremiah on the farm, who
worked it as his tenant, on shares. While the son was in possession the
defendant, who then owned the said lease and all the interest and title of the
Van Rensselaers in the farm, commenced an action of ejectment against him,
to which the plaintiff was not made a party, to recover the farm for non-
payment of rent, in which he procured a judgment by default, upon which an
execution was issued, under which the defendant was put in possession by the
sheriff, and so remained at the time of the commencement of this action.
Upon the trial this judgment was received in evidence. No rent had been
paid upon the lease for many years. It did not affirmatively appear how
St. John originally came into possession, nor that either he or the plaintiff
ever paid any rent or in any way recognized the existence of the lease.
*Held*, that, from the fact of the existence of the perpetual lease in 1794 the law
would presume its continued existence.
That in the absence of all evidence to the contrary, St. John must be presumed
to have entered under this lease.
That this presumption was not affected by the execution of the quit-claim deed,
nor was it of any consequence whether or not the plaintiff had knowledge of
the existence of the lease.
That the evidence failed to show any adverse claim or possession by the plaintiff
or his grantors sufficient to start or establish a title by adverse possession as
against the defendant, his landlord.
That the judgment-roll in the action brought by the defendant against the plain-
tiff's son was competent evidence, not as an adjudication affecting the plaintiff,
but as tending to show that the defendant came peacefully into possession of
the premises under his lease.
That even if the plaintiff's title under the lease could not be forfeited without the
entry against him of a formal judgment in ejectment, yet, as in this action he
claimed in hostility to the lease, it would be error to award to him a judgment
for the recovery of the farm, subject to the terms and conditions of the lease.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was one of ejectment to recover lands in the town of Berne, Albany county.

*S. W. Rosendale,* for the appellant.

*W. & G. W. Youmans,* for the respondent.

LANDON, J.:

We do not think this judgment can be upheld.

It was admitted on the trial that the land described in the complaint was, at the date of the lease, from Stephen Van Rensselaer to Peter Snyder, subject to the conditions thereof. This lease was dated in 1794. It was the usual manorial lease in fee, and, as found by the referee, of the kind described in the cases of *Van Rensselaer* v. *Hays* and *Van Rensselaer* v. *Ball* (reported in 19 N. Y., 68, 100). It also appeared that before the commencement of this action, and before this defendant entered into possession of the land, the said lease and all the interest in and title to the land of the said Van Rensselaer had been duly transferred to and vested in the defendant, and that his entry into possession of said land was peaceful ; also that no rent had been paid upon the said lease for many years.

The plaintiff's title is as follows : St. John was in possession of the land from 1850 to 1863. In 1863, St. John, by quit-claim deed, conveyed the land to the plaintiff. Plaintiff was in possession until 1881, when his son, Jeremiah Bradt, went into possession as his tenant. While Jeremiah was thus in possession, this defendant brought an action against him to recover possession of the land for non-payment of rent under the said original lease, and upon Jeremiah's default, recovered judgment for the possession, and execution being issued upon this judgment, the sheriff, by virtue thereof, delivered the possession of the land to this defendant. This plaintiff was not a party to that action. It does not affirmatively appear how St. John originally came to enter into possession, and it does not appear that either he or the plaintiff ever paid any rent or in any way recognized said lease.

The admission of the parties shows that the lands were subject to

the lease in 1794. From that admission we know the lease was then operative, and that the relation of landlord and tenant existed between Van Rensselaer and Snyder. The lands being once subject to the lease, and the lease being, by its terms, perpetual, the presumption is they still continue subject. (*Tompkins* v. *Snow*, 63 Barb., 525; *Lyon* v. *Adde*, Id., 89; *Lyon* v. *Odell*, 65 N. Y., 28.) The lease being perpetual, the presumption results that every one entering into possession enters under the lease. (*Whiting* v. *Edmunds*, 94 N. Y., 309; *Crooked Lake Nav. Co.* v. *Keuka Nav. Co.*, 37 Hun, 9; *Jackson* v. *Davis*, 5 Cow., 123.) Hence St. John, the grantor of the plaintiff, unless he can show the contrary, is presumed to have entered under this lease. He may have paid no rent for twenty-three years, but the only effect of this would be to limit his landlord's recovery of rent to the twenty years immediately before action brought. (*Central Bank* v. *Heydorn*, 48 N. Y., 260; *Lyon* v. *Odell*, 65 id., 28.) No presumption arises that the covenant to pay rent has been released or discharged. (Id.)

For the same reasons the presumption exists that the plaintiff, notwithstanding his quit-claim deed from St. John, entered subject to the lease. Whether he knew of the existence of the lease is of no consequence. His ignorance could not extinguish it. (*Whiting* v. *Edmunds, supra.*) There is no evidence that the lease has been extinguished. The plaintiff, however, asserts title by adverse possession. This claim must fail because there is no proof that an adverse possession was ever started. Once in as tenant, the tenant cannot, without surrendering to his landlord, and then entering under a hostile claim, start an adverse possession. (*Jackson* v. *Spear*, 7 Wend., 401; *Kenada* v. *Gardner*, 3 Barb., 589; *Hill* v. *Hill*, 4 id., 419.) He must bring home to his landlord knowledge of his adverse claim. (*Whiting* v. *Edmunds, supra.*)

The Code, section 373, declares the possession of the tenant to be the possession of the landlord, until expiration of twenty years after the termination of the tenancy, not after the non-payment of rent, not after the giving a deed consistent with the lease. No covenants are implied in a deed. (1 R. S., 738, § 140.) A quit-claim, therefore, implies no hostility to the landlord's title. As no adverse possession was ever started, none has ever ripened into title.

The judgment-roll of *Church* v. *Jeremiah Bradt* was competent

evidence, not as an adjudication affecting the plaintiff, but as tending to show that Church came peacefully into possession of the premises, claiming under his lease. (2 R. S., 507, § 1.) Its admissibility rests upon the same ground as the deed from St. John to the plaintiff. The defendant was no party to that deed, but it was competent evidence to show what claim of title the plaintiff had.

The rent being in arrear and the lease in force, the defendant, as landlord, had the legal right to recover possession against any one withholding possession from him. Whether the plaintiff was assignee of the whole estate or term of the original tenant is not material. The action is not to recover upon a covenant to pay rent. If the plaintiff did not withhold the possession, the defendant had no occasion for contention with him, and, therefore, could peaceably enter into possession. As the defendant took possession under a judgment his possession was lawful. (*Jackson* v. *Rightmyre*, 16 *Johns.*, 314, 325.) The defendant being peaceably and apparently lawfully in possession, the plaintiff to eject him must show his own title, and upon comparison of titles, the better title. The plaintiff's title is subject to the lease, and as he does not by his complaint ask possession under the lease, but in hostility to it, he has not shown the better title. The plaintiff urges that the claim under the lease is stale, and therefore should be rejected. If the lease is perpetual, it is presumed to last as long as the land does, unless shown to be extinguished.

The plaintiff, however, contends that under the lease the title to the premises is in him, and, though the premises were vacant, the rent in arrear, and the landlord peacefully entered, yet the plaintiff's title under the lease cannot thus be forfeited, and can only be forfeited by judgment in ejectment. He cites *Allen* v. *Brown* (5 Lans., 280), and *Jackson* v. *Elsworth* (20 Johns., 180). These were actions in which this doctrine was held in favor of rights asserted under the lease, not in hostility to it.

If in this action the plaintiff had recovered judgment awarding him possession under the lease, the cases cited would tend to support such a judgment. But the judgment recovered is hostile to the lease, and if permitted to stand, forever bars the defendant of all rights under it. (Code, § 1524.)

The judgment must be reversed. If upon a new trial the

plaintiff elects to recognize the lease, an amendment of the complaint upon just terms may be open to him.

Judgment reversed, new trial granted, costs to abide event, reference discharged.

BOOKES, J., concurred.

LEARNED, P. J. (dissenting):

The plaintiff makes title to the land, as follows: From 1850 to 1860 it was occupied by Stephen St. John. After 1860 it was occupied by his sons Enos and Adoniram St. John, till 1863. In that year, being in possession, they conveyed in fee, by quit-claim, to plaintiff, and the deed was recorded March 20, 1863. Plaintiff continued to occupy under this deed till about 1881, and then put his son Jeremiah on, who worked the farm as tenant for plaintiff, on shares, until he moved off in that same year.

This makes an apparent title in plaintiff.

The defendant makes title, as follows: He shows a grant in fee, reserving a perpetual rent-charge made by Stephen Van Rensselaer to one Peter Snyder, May 5, 1794, and it is admitted that at that date the premises were subject to that lease. He shows that, before the action against Jeremiah Bradt, the interest of Van Rensselaers in that lease had come to him; that in 1881, many years rent were due thereon, and that he commenced an action of ejectment March 21, 1881, against Jeremiah Bradt, solely for non-payment of rent; that Jeremiah made no defense; that he (Church) took judgment by default, issued execution, and was put into possession by the sheriff.

It is found that this plaintiff was not a party to that action and had no notice of it.

No evidence is given connecting the St. Johns or the plaintiff with the lease to Snyder.

The judgment against Jeremiah Bradt is not binding on this plaintiff. (Code Civ. Pro., §§ 1680, 1503.) According to *Finnegan* v. *Carraher* (47 N. Y., 493), this plaintiff was a necessary party to that action, inasmuch as Jeremiah was his tenant, and he himself claimed adversely to the plaintiff in that action. (Code Civ. Pro., § 452; *Bennett* v. *Leach*, 25 Hun, 178.) To make this judgment binding on the plaintiff would be to revive the old fiction of the *casual ejector*. (3 Bl. Com., 203.)

Whether Church came peaceably into possession of the premises is not material in this case. Here the question is one of title, that is, whether the plaintiff or the defendant has title to the premises. So that it seems to be immaterial whether or not Church entered by a judgment against one under whom the plaintiff does not claim, or whether he entered by force.

This judgment did not even determine, as against plaintiff, that there was rent in arrear on the Snyder lease. And there is no evidence given that, at the time the present action was commenced, April 11, 1883, there was any rent in arrear on that lease. The only testimony on this subject refers to the 1st day of January, 1881, and not to April 11, 1883.

The defendant claims that the plaintiff is an assignee of Snyder. Assume that this be so, for the sake of the argument, then the plaintiff would be entitled to possession of the land. He could be deprived of it only by ejectment for non-payment of rent. (*Jackson ex dem. Myer* v. *Elsworth*, 20 Johns., 180.) And after judgment in such an action he would have six months in which to redeem. (Code Civ. Pro., § 1508.) This right he has lost, if the defendant's position be correct. The defendant avers that the plaintiff can now redeem. But the six months have elapsed, and the privilege, it will be seen, is given to the defendant in the action, or one who has succeeded to his interest. This plaintiff was not the defendant in the ejectment action, and has not succeeded to the interest of the defendant therein.

But is there any evidence that plaintiff is an assignee of Snyder or claims under him? The presumption that the lands continue subject to the lease exists as to all who claim under the lessee. That is all which is decided in *Tompkins* v. *Snow* (63 Barb., 525); *Lyon* v. *Adde* (Id., 89), or *Lyon* v. *Odell* (65 N. Y., 28). In every one of these cases it is stated that the party, as a fact, claimed under the lessee. The same is said in *Whiting* v. *Edmunds* (94 N. Y., 309). In that case Wellman was a tenant of Winchell, and the question discussed was whether Royal Torrey did not, as a matter of fact, buy the lease of Wellman and enter under it, instead of entering under another title. The court do not intimate that the fact of entering on the premises was presumptive evidence that Torrey entered under the

lease.   And the circumstance which tended to show that he did so enter was his alleged purchase of the lease.  So, also, to the same effect are *Crooked Lake Navigation Company* v. *Keuka Navigation Company* (37 Hun, 9) and *Jackson* v. *Davis* (5 Cow., 123).   In all these cases it has been a question of fact whether or not the party entered under a previous lease.   The mere existence of such a lease does not determine that question.   When it is once shown that the party entered under a lease, then, of course, the presumption is that he holds under it, until that presumption is rebutted.   But until it is shown that the party entered under the lease, there is no presumption arising from the existence of a lease, to which he was no party.   His privity must be shown, and cannot be presumed without evidence.   No case which is referred to by the defendant's counsel shows that after a lease is once proved, every succeeding occupant becomes a tenant, whether he takes under the lease or not.

It is true that, once in as a tenant, a party cannot set up an adverse possession without first surrendering to the landlord or without some equivalent act.   But then the point is that the plaintiff is not shown to have ever been in as a tenant.   If the defendant's position is correct it would be impossible for any person to enter on this land adversely to the defendant.   For the defendant says that every possession of the land is presumed to be under the lease and therefore, cannot be adverse.   But certainly it is a possible thing for one who is not an assignee of Snyder, and does not claim under him, to assert an adverse possession.

We must keep in mind that, while it may be convenient to speak of the instrument of 1794 as a lease, the courts have held that it operates as a deed of assignment with a rent charge reserved.   (*Van Rensselaer* v. *Dennison*, 35 N. Y., 393.)   The title, then, which the defendant rests upon is, by his evidence, shown to be in Snyder, subject to the rent charge.   The defendant, therefore, cannot claim the fee by virtue simply of the assignments from Van Rensselaer to him.   There was no reversion in Van Rensselaer.

The question, then, seems to be whether the referee was bound to hold, as a matter of law, that St. John and his sons and their grantee held under the deed of 1794, from the mere fact that their possession of the land was later in point of time than the date of

the deed.  He held the evidence failed to show that the plaintiff or his grantors entered under Van Rensselaer or under Snyder, or that they had ever paid rent or recognized the existence of the relation of lessor and lessee of the premises, or that, while in their possession, the land was subject to the provisions of the lease.

The defendant should, if he could, have gone further and should have shown that St. John took title from Snyder or entered under him.  But the defendant seems to wish to treat the plaintiff as tenant enough to be bound by the recovery against Jeremiah, but not as tenant enough to have a right to redeem the premises.

The judgment should be affirmed, with costs.

Judgment reversed, new trial granted, referee discharged, costs to abide event.